AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 22-mj- 26 |
| INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (435) 830-6788 THAT IS STORED AT PREMISES CONTROLLED BY VERIZON | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Special Agent Stephanie Bobo, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ____April 1, 2022____

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana          Richard L. Bourgeois, Jr., U.S. Magistrate Judge
_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(435) 830-6788** THAT IS STORED AT PREMISES CONTROLLED BY VERIZON | Case No. _22-mj-26_<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Stephanie Bobo, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain cellular telephone assigned call number **(435) 830-6788** ("**The Account**") that is stored at premises controlled by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent ("SA") with Federal Bureau of Investigation ("FBI") and am presently assigned to the Violent Crimes Against Children squad.  I have been a SA since September 2017.  Throughout my law enforcement career, I have participated in investigations of bank fraud, health care fraud, bankruptcy fraud, public corruption, intellectual property rights,

crimes against children, child exploitation, child pornography, and human trafficking. I am familiar with, and have employed, the investigative techniques used in these investigations, such as the use of cooperating witnesses, confidential informants, interviews, analysis of bank records, consensual recordings, search and seizure warrants, and Title III court authorized wire interceptions.

3.     In the performance of my duties, I have investigated and assisted in the investigation of matters involving the possession, collection, production, and distribution of images of child pornography, in violation of 18 U.S.C. § 2252 and 2252A I have personally conducted and participated in numerous child exploitation and child pornography investigations, search warrants, and suspect and witness interviews. I have received training and instruction in the field of investigation of child pornography and have participated in investigations relating to sexual exploitation of children. I have successfully completed several basic and advanced child exploitation and child pornography investigation courses, including online undercover techniques, undercover chat, and peer-to-peer investigations. As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images, and media, such as storage devices, the internet, and printed images).

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Production of Child Pornography, in violation of 18 U.S.C.§2251(a) and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) were committed by **GRANT DURTSCHI ("DURTSCHI").**  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## LAW AND DEFINITIONS

5.    Title 18, United States Code, Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or transporting any minor in or affecting interstate or foreign commerce, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted in or affecting interstate or foreign commerce.

6.    Title 18, United States Code, Section 2252A(a)(2) prohibits a person from knowingly distributing any visual depiction of a minor engaging in sexually explicit conduct that has been mailed, or shipped or transported using any means or facility of interstate commerce, or in or affecting interstate commerce by any means, including by computer.

7.    "Child pornography," or "child sexual abuse material" ("CSAM") means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where-- (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.[1]

8.    "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data

---

[1] *See* 18 U.S.C. §2256.

3

which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[2]

9.     "Sexually explicit conduct," as defined in 18 U.S.C. §2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. Whether a visual depiction constitutes such a lascivious exhibition requires a consideration of the overall content of the material, including whether the focal point of the visual depiction is on the child's genitalia or pubic area; whether the setting of the depiction is sexually suggestive, that is, in a place or pose associated with sexual activity; whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; whether the child is fully or partially nude; whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; or whether the depiction is designed to elicit a sexual response in the viewer.[3]

## PROBABLE CAUSE

10.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C.§2251(a) and 18 U.S.C. § 2252A(a)(2) been committed by **DURTSCHI.**

11.     The information contained herein is based upon my own investigation as well as information supplied to me by other law enforcement officers.  I have not included all facts known to me concerning this matter, but only facts necessary to set forth probable cause.

---

[2] *See* 18 U.S.C. §2256(5).
[3] *See United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986), *aff'd* 813 F.2d 1231 (9th Cir.1987); *See also* Fifth Circuit Pattern Jury Instructions, 2.85A (2019).

## Initial Investigation

12.    This investigation stemmed from a complaint received from an individual, identified herein as "B.K.," regarding sexually explicit photos being taken of his minor-stepdaughter.  Specifically, on August 2, 2021, B.K. called the FBI National Threat Operations Center to report that his wife, H.K. was producing child sexual abuse material of his minor stepdaughter, R.K. (hereinafter, "**VICTIM-1**").  Specifically, B.K. reported that H.K. allowed **DURTSCHI** to take sexually explicit photographs of **VICTIM-1**.

13.    **VICTIM-1** (D.O.B. xx/xx/2008) is a thirteen (13) year old female and resident of Prairieville, Louisiana, in the Middle District of Louisiana.

14.    On August 11, 2021, FBI Agents interviewed B.K. at the FBI Baton Rouge Resident Agency. B.K. stated that on or about February or March 2020, **VICTIM-1** began working with an acting/modeling agency after expressing an interest in acting/modeling.

15.    **H.K.** began posting pictures of **VICTIM-1** on Instagram to help **VICTIM-1**'s modeling career. **H.K.** posted the pictures on **VICTIM-1**'s Instagram account.

16.    According to B.K., it was around this time that **H.K.** was contacted by J.L., the mother of another local minor-model, who introduced **H.K.** and **VICTIM-1** to **DURTSCHI**.

17.    **H.K.** and **VICTIM-1** traveled to different states to do photoshoots with **DURTSCHI**, including Texas, Louisiana, and Florida. Other minor-models were also present for some of the photoshoots with **VICTIM-1**.

18.    B.K. informed agents that in the Spring of 2021, **H.K.** and another mother, P.G., sued **DURTSCHI** for selling photographs of their daughters without their consent.  P.G. is the mother of B.S. (hereinafter, "**VICTIM-2**"), a fourteen (14) year old female who resides in Polson, Montana.

19.    On or about August 2021, B.K. began talking with **DURTSCHI** over the application Telegram. Based on my training and experience, Telegram is a free, cross-platform, cloud-based instant messaging (IM) system available for desktop and mobile platforms. The service also provides end-to-end encrypted video calling, VoIP, file sharing and several other features. The servers of Telegram are distributed worldwide but its operational center is based in Dubai in the United Arab Emirates. Various client apps are available for desktop and mobile platforms.  Telegram provides end-to-end encrypted voice and video calls and optional end-to-end encrypted "secret" chats.

20.    In their conversations on Telegram, **DURTSCHI** told B.K. about men who called themselves "sponsors" and who gave money to minor females to help fund their modeling careers. In exchange for their money, these "sponsors" could request photographs of the minor females from the photoshoots.  In some instances, the sponsor could pay to attend the photoshoots with the minor females.  **DURTSCHI** told B.K. that the "sponsors" paid the minors through the peer-to-peer payment applications Venmo or CashApp.

21.    B.K. also noted that **DURTSCHI** told **H.K.** that he did not take nude photographs of any minor females.  However, **DURTSCHI** admitted that he was aware his photographs were purchased by "pedos." **DURTSCHI** told **H.K.** multiple times the main buyers of these photographs were pedophiles. **DURTSCHI** said that "megalinks" were the most common way he distributed the photographs of the minors from the photoshoots.

22.    Based on my training and experience, Mega is a cloud storage and file hosting service maintained by Mega Limited based in Auckland, New Zealand.  The service is offered through web browsers and web-based apps for Android, iPhone, and Windows and can be accessed from traditional computers along with smart phones and tablets.  Users can sign up for free and

are provided at least 15GB of cloud storage to save files. Mega stores these files using end-to-end encryption which prevents anyone, including Mega itself, from accessing or viewing the files or folders without the encryption key. Files or folders can then be shared with other individuals by creating a link to the file or folder. The link will contain the encryption key needed to decrypt the file or folder.

23.     After the initial complaint from B.K., I learned of another complaint regarding **VICTIM-1** made to the Louisiana Bureau of Investigation ("LBI"). I obtained the full set of photos taken by **DURTSCHI** of **VICTIM-1** that were received by LBI. The photographs consisted of a series of **VICTIM-1** in various poses in a G-string bikini on a bed. There were 80 images. Many of the images included **VICTIM-1** with her legs spread apart while lying on the bed. Approximately two of the images included **VICTIM-1** on all fours crawling on the bed. Approximately three of the images were **VICTIM-1** positioned with her head on a pillow and her buttocks raised in the air. In one of the images the focal point was on **VICTIM-1**'s genitals while she was posed in a sexual position on the bed. The **VICTIM-1**'s genitals were barely covered by the G-string bikini.

## Interview of H.K.

24.     Based on the information provided by B.K, I, along with another FBI Agent, interviewed **H.K.** at her home in Gonzales, Louisiana on August 18, 2021.

25.     **H.K.** stated that **DURTSCHI** shared his photographs of **VICTIM-1** with her using Google Drive. Based on my training and experience, I know that Google Drive is a cloud storage application, allowing the user to store, share, and collaborate on files and folders from any mobile device, tablet, or computer. Drive provides encrypted and secure access to your files. Files shared with you are proactively scanned and removed when malware, spam, ransomware, or phishing is

detected. And Drive is cloud-native, which eliminates the need for local files and minimizes risk to your devices.

26.     **DURTSCHI** created a second Google account for **VICTIM-1** because he believed there was not enough storage space on **VICTIM-1**'s account.[4] **DURTSCHI** provided **H.K.** with the login information for the second Google account.   When **H.K.** logged into the account, she saw emails indicating that **DURTSCHI** was selling **VICTIM-1**'s photographs and videos, along with other items, such as panties worn by **VICTIM-1**, to multiple different men.   **H.K.** identified at least 20 different men to whom **DURTSCHI** sold **VICTIM-1**'s photographs, videos and other items.   **DURTSCHI** also posted photographs of **VICTIM-1** through his Instagram accounts, @timelssintx and @timelessintx2 (collectively, "Instagram accounts").

27.     **DURTSCHI** asked to take nude photographs of **VICTIM-1**. Additionally, **H.K.** was aware **DURTSCHI** told **VICTIM-2** he would rather see her naked out of all the girls he photographed.

28.     In approximately July 2020, **DURTSCHI** asked to take nude photographs of **VICTIM-1**. **DURTSCHI** became persistent in asking to take nude photographs of **VICTIM-1**.

29.     **VICTIM-1** was last photographed by **DURTSCHI** in October 2020 in Plano, Texas. **H.K.** said that during this shoot, **VICTIM-1** was uncomfortable with how **DURTSCHI** was touching her. **DURTSCHI** started to get "handsy" during the shoot.

30.     **H.K.** said that individuals wanting to buy **VICTIM-1**'s photographs contacted **DURTSCHI**. **DURTSCHI** then sent the requests to **H.K.**, who would choose the photos that would be distributed to those purchasing **VICTIM-1**'s photographs.

---

[4] The name of the second Google account is known to law enforcement but has intentionally been omitted from this affidavit to protect the identity and privacy of **VICTIM-1**.

31.     **H.K.** said that **DURTSCHI** sold photographs publicly to "whoever he wanted." **DURTSCHI** sold the photographs through the website www.timelessintx.com. **H.K.** reported the website, and it was ultimately shut down.    In addition, **H.K.** reported the Instagram account @timelessintx, which was also shut down.

32.     **H.K.** consented to the search of her phone, and a forensic extraction was made of the device.

33.     **H.K.** provided the phone number that she used to contact **DURTSCHI,** which is associated with **The Account.**

**Interview of VICTIM-1**

34.     On September 28, 2021, agents conducted a child forensic interview with **VICTIM-1**.

35.     **VICTIM-1** stated that she was last photographed by **DURTSCHI** in October 2020. The photoshoot took place near Dallas, Texas, at an AirBNB rented by **DURTSCHI**.   **VICTIM-1**, her mother, and **DURTSCHI** stayed at the AirBNB together. **DURTSCHI** stayed in one room, while **VICTIM-1** and her mother stayed in another room.

36.     **VICTIM-1** said that she got upset with **DURTSCHI** during the photoshoot because he "touched her butt". She said that **DURTSCHI** moved her to position her for a photo and touched her butt in the process. It made her feel uncomfortable. **DURTSCHI** also untied the string on the bottoms of her swimsuit. **VICTIM-1** caught the suit and tied it back.

37.     **DURTSCHI** asked **VICTIM-1** to take nude photographs. **DURTSCHI** said it was artistic. **VICTIM-1** was not comfortable taking nude photographs.

9

## Use of Electronic Devices to Facilitate Distribution of CSAM

38.     Records from Verizon indicated that **The Account** was registered to

**DURTSCHI**.

39.     Agents reviewed the evidence obtained from the forensic analysis of **H.K.**'s phone.

The phone contained communications between **H.K.**, **DURTSCHI**, and others via the messaging

application Telegram.

40.     In those conversations, **DURTSCHI** admitted to **H.K.** that he was a pedophile.

**DURTSCHI** stated that his family knew he was a pedophile, and 99% of the people in this industry

[teen modeling] were pedophiles.

41.     In one conversation, dated August 17, 2020, **H.K.** told another individual, who is

believed to be **DURTSCHI**, that she downloaded all of the photos shared by **DURTSCHI** from

**VICTIM-1**'s Google Drive account to her computer.



**Deleted Account**                                                    20:03

Are there any other post type pics you don't have? I shared some. But
might have had more. I usually download things so the drive can be
emptied for the next batch.

**HK**   ▬▬▬▬▬▬▬▬                                                  20:08

I went through my computer. It looks like I have everything downloaded
now.

42.     On March 8, 2022, a federal search warrant was executed at **DURTSCHI's**

residence, located in Lewisville, Texas. During the search, **DURTSCHI** told me that he used his

cellular telephone, associated with **The Account**, to access Telegram. I know this is the messaging

application used to communicate with **H.K.**

43.    On March 11, 2022, a federal search warrant was executed at **H.K.**'s residence, located in Gonzales, Louisiana. During the search, **H.K.** told me which items in the residence belonged to her. Specifically, she told me a laptop and a hard drive belonged to her.

44.    On the same day, I reviewed the hard drive that was collected from **H.K.**'s residence. On the hard drive were images of **VICTIM-1** wearing a white one-piece leotard with white stockings and red high heels. The pictures were taken as a series of sexual poses on the bed. Many of the images included **VICTIM-1** with her legs spread apart while lying on the bed. Approximately 17 of the images included **VICTIM-1** on all fours crawling on the bed. Approximately 10 of the images were **VICTIM-1** positioned with her head down on the bed and her buttocks raised in the air. The sides of her leotard were rolled back exposing her buttocks. The images showed a close-up of the **VICTIM-1**'s genitals posed in a sexual position on the bed. The **VICTIM-1**'s genitals were barely covered because the sides of the leotard were rolled back to expose the genitals.

45.    Through forensic review of the hard drive, the images described above possessed a Zone identifier which indicates the files originated from the Internet.

46.    A forensic review was conducted on the laptop that was retrieved from **H.K.**'s residence. I reviewed the downloads folder on the laptop and observed several zipped folders that were downloaded from Google Drive on August 1, 2020.

47.    The FBI's Forensic Examiner Nikilia Stovall extracted the zipped folders and was able to locate the same images that were observed from the hard drive and described above. These images were downloaded from Google Drive onto the laptop on August 1, 2020.

48.    **DURTSCHI** uploaded the images to the Google Drive account that was then accessed and downloaded by **H.K.**

49.    **H.K.** was in control of the laptop that downloaded the images of CSAM on August 1, 2020.

50.    **The Account** is controlled by **DURTSCHI.**

51.    I believe the location data is relevant and will corroborate the location of **DURTSCHI** at the time the Google Drive account was accessed to upload the images of CSAM. It will also corroborate the locations of the photo shoots of **VICTIM-1.**

52.    In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

53.    Based on my training and experience, I know that Verizon can collect cell-site data about **the Account.**  I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

54.     Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **the Account's** user or users and may assist in the identification of co-conspirators and/or victims.

55.     Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT").  RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## AUTHORIZATION REQUEST

56.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

57.     I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Verizon, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

58.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Stephanie Bobo, Special Agent
Federal Bureau of Investigation

**Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on** ~~March~~ ---------; **2022.**

April 1

HONORABLE RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

14

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (435) 830-6788, ("the Account"), that are stored at premises controlled by Verizon ("the Provider") at 180 Washington Valley Road, Bedminster, New Jersey 07921.

## ATTACHMENT B

### Particular Things to be Seized

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to **the Account** listed in Attachment A for the time period of June 1, 2020, at 12:00 p.m. through August 31, 2020, 11:59 p.m.:

    a. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received; and

        ii. including cell site locations and any and all stored archived date.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct.  I am employed by **VERIZON**, and my title is

_____.  I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved.  I state

that the records attached hereto are true duplicates of the original records in the custody of

**VERIZON**.  The attached records consist of **[GENERALLY DESCRIBE RECORDS**

**(pages/CDs/megabytes)]:**

_____

_____

_____

_____

_____.

I further state that:

a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of **VERIZON**, and they were made by **VERIZON** as a regular practice; and

b.      such records were generated by **VERIZON'S** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **VERIZON** in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by **VERIZON**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
 Date                                                      Signature

2